IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | Civil Action No. 07-359 |
| vs. | ) | Judge Nora Barry Fischer |
| MASK ENTERPRISES, LLC d/b/a NAKAMA JAPANESE STEAKHOUSE AND SUSHI BAR, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. Introduction

This matter is before the Court on a motion for summary judgment. Mask Enterprises ("Defendant"), doing business as Nakama Japanese Steakhouse and Sushi Bar, filed this motion on January 31, 2008, in which it seeks summary dismissal of both counts in the Equal Employment Opportunity Commission's ("Plaintiff" or "EEOC") complaint, i.e., toleration of a racially hostile work environment and discriminatory retaliation in violation of 703(a)(1) and 704(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

## II. Procedural Background

On March 20, 2007, Plaintiff commenced this action. (Docket No. 1). At that time, the case was assigned to Judge Terrence F. McVerry. Subsequently, this case was reassigned to the undersigned Judge on June 25, 2007. (Docket No. 13). Initially, pursuant to Judge McVerry's case

management order, discovery in this matter was to be concluded by August 31, 2007. (Docket No. 12). However, due to several discovery disputes, discovery was not completed until December 31, 2008. (Docket No. 40). In addition, at the parties' request, the Court conducted a settlement conference in this matter on October 2, 2007. (Docket No. 26). Because a settlement was not reached, on January 31, 2008, Defendant filed its Motion for Summary Judgment and Brief in Support. (Docket Nos. 44 and 45). Thereafter, on April 1, 2008, after Plaintiff requested and the Court granted an extension of time, (Docket No. 52), Plaintiff filed its Response and Brief in Opposition to Defendant's Motion. (Docket Nos. 53 and 55). Subsequently, on April 15, 2008, Defendant filed its Brief in Reply. (Docket No. 59). On April 23, 2008, this matter was fully briefed once Plaintiff filed its Sur-Reply Brief. (Docket No. 63).

## III. Standard

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the

non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. "The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civil Action No. 05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721at 40 (2d ed.1983))); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-23. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or

answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Discussion

The Court finds that Defendant is not entitled to judgment as a matter of law as numerous genuine issues of material fact surround both of Plaintiff's claims  The Court will consider the elements of each claim, in turn.

### A. Hostile Work Environment Claim

In order to establish a *prima facie* case for a hostile work environment under Title VII, the plaintiff must prove the following: (1) the employee suffered intentional discrimination because of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22. The Court finds that genuine issues of material fact exist with respect to the first three factors.

For the first factor, the Plaintiff must prove that Taneesha Thomas ("Thomas") suffered intentional discrimination because of her race. Accordingly, Plaintiff must show that, if Thomas were a white person, she would not have been treated in the same manner. *Johnson v. Souderton Area Sch. Dist.,* Civ. No. 95-7171, 1997 WL 164264, at *6 (E.D. Pa. Apr. 1, 1997). Thomas recalls a pattern of events to support her allegations. The Court will highlight the most important events. In early 2006, after a customer used racially derogatory language toward Thomas, she reported the

incident to general manager Vince Cortazzo ("Cortazzo"). (Docket No. 54 at ¶ 5). It is disputed if and how effectively Cortazzo dealt with the customer. (Docket No. 54 at ¶ 5; Docket No. 47 at ¶ 5). After news of the incident spread throughout the restaurant, assistant manager Andrew Merola ("Merola") allegedly began to heckle Thomas with racially offensive comments, such as calling her a "fucking nigger." (Docket No. 54 at ¶ 13). Over the next few months, Thomas recalled at least three separate occasions when Merola used this language. (Docket No. 54 at ¶ 13). Plaintiff also claims that Merola drew a KKK hood on Thomas' end-of-shift sales report. (Docket No. 54 at ¶ 13).

Defendant counters Plaintiff's claim by citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)(internal quotation marks and citations omitted), in which the Supreme Court of the United States stated that "simple teasing, off-hand comments, and isolated comments (unless extremely serious) will not amount to" intentional discrimination. (Docket No. 45 at 4). Defendant argues that the restaurant is a fun and fast-paced environment in which everyone, including Thomas, engages in joking banter that occasionally exhibits racial undertones. (Docket No. 45 at 4; Docket No. 47 at ¶¶ 8-10). Numerous employees testified to the friendly work environment and to Thomas' participation in the sort of behavior on which she bases her complaint, including calling Merola a "cracker." (Docket No. 47 at ¶¶ 8-11, 13). Further, Merola denies drawing the KKK hood on Thomas' paperwork. (Docket No. 47 at ¶ 14). According to Defendant, this only leaves the three occasions when Merola allegedly called Thomas a "fucking nigger." Therefore, Defendant argues that Plaintiff's claim is based on a few isolated incidents which do not rise to *Faragher*'s requisite level of severity. (Docket No. 45 at 3-9).

In *Faragher*, the Court inserted the parenthetical "unless extremely serious" for situations

such as this case. *Faragher*, 524 U.S. at 788. The use of the language "fucking nigger" and a drawing of a KKK hood are both very serious allegations. If the Court views the evidence in the light most favorable to the Plaintiff, these incidents are not isolated and amount to more than mere teasing. The Court finds that genuine issues of material fact surround the legitimacy and frequency of the incidents which support the first factor.

For the second factor, the plaintiff must prove that the discrimination was severe or pervasive. In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22-23 (1993), the Supreme Court intentionally declined to establish a "mathematically precise test" to determine a hostile work environment as severe or pervasive. Rather, it held that the standard is the totality of the circumstances. *Id.* at 23. Furthermore, the United States Court of Appeals for the Third Circuit requires a lengthy pattern of overt harassment, viewed through the Supreme Court's totality of the circumstances lens, to support the severe or pervasive factor. *Cardenas v. Massey,* 269 F.3d 251, 262 (3d Cir. 2001). Generally, case law does not support a claim based on one or two incidents involving racially offensive language. *Faragher,* 524 U.S. at 788; *Andrews,* 895 F.2d at 1484; *see also Morgon v. Valenti Mid-Atlantic Mgmt.,* No. 01-134, 2001 WL 1735260, ay *3 (E.D. Pa. Dec. 14, 2001) (discussing isolated uses of the word "nigger").

Plaintiff argues that, when the string of alleged incidents are viewed within the context of each other, their severity and lengthy pattern become evident. (Docket No. 53 at 5). In addition to the repeated occasions when Merola used racially offensive language toward Thomas, Plaintiff also attests to other disturbing events, such as the KKK drawing and racially charged episodes involving

customers.[1] (Docket No. 54 at ¶¶ 5, 9, 13). Moreover, when Thomas approached Defendant's owners and senior management for assistance, they appeared sympathetic but did not effectively handle the situation, making the work environment even more unbearable for Thomas. (Docket No. 54 at ¶ 5, 13). Plaintiff states that the combination of these offensive incidents shows that racially charged behavior set the tone for this place of employment. (Docket No. 53 at 5).

Aside from disputing certain events such as the KKK drawing and the non-joking tone of the racial banter, Defendant points out that the incidents in question span over a mere fraction of Thomas' four year employment with Defendant and that they ceased long before Merola stopped working at the restaurant. (Docket No. 45 at 9; Docket No. 47 at ¶¶ 8-9, 13-14). Even more importantly, Thomas still works at the restaurant. Defendant argues that the alleged racial feud between Merola and Thomas cannot be characterized as ongoing conduct, but rather as isolated incidents, which consequently do not rise to the requisite level of severity. (Docket No. 45 at 9). However, if the Court views the record in the light most favorable to the Plaintiff, the claim surpasses the threshold of isolated incidents. Because many of the cited incidents are in dispute, the Court finds that there are genuine issues of material fact with respect to this factor.

For the third factor, the plaintiff must prove that the discrimination detrimentally affected the employee. "All that the victim of racial harassment need show is that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable

---

[1] Some of these episodes were not aimed at Thomas, but she either overheard them or learned of them through others. In *Jackson v. Quanex Corp.,* 191 F.3d 647, 661 (6th Cir. 1999), the court gave credit to secondhand harassment, which is aimed at someone other than the plaintiff. The court stated that secondhand harassment can contribute to a hostile work environment. *Id.*

employee's ability to do his or her job." *Davis v. Monsanto Chemical Co.,* 858 F.2d 345, 349 (6th Cir. 1988). Defendant's main argument is that Thomas engaged in the same behavior on which she bases her claim. (Docket No. 45 at 10; Docket No. 47 at ¶ 10). Therefore, she could not have been that upset over the language, and "Title VII does not guarantee a work environment free of stress." *Johnson,* 1997 WL 164264, at *6. However, Plaintiff denies that Thomas participated in any joking racial banter. (Docket No. 53 at 9; Docket No. 54 at ¶ 10). Even if she had, there is no evidence that others found it offensive or told her to stop. (Docket No. 53 at 9; Docket No. 54 at ¶ 13). Plaintiff also argues that, even if Merola had intended his racial slurs to be jokes, Thomas did not perceive them in this manner. (Docket No. 53 at 7). She found her work environment to be racially charged, hurtful, and offensive. (Docket No. 54 at ¶ 12). Because both parties dispute Thomas' participation in and the effect of any alleged racial banter, the Court finds that there are genuine issues of material fact with respect to this factor and to the entire hostile work environment claim.

**B. Retaliation Claim**

In order to establish a *prima facie* case of retaliation under Title VII, plaintiff must prove the following: (1) the employee engaged in conduct protected by Title VII; (2) the employer took an adverse action against the employee either after or contemporaneous with the protected activity; and (3) a causal link exists between the employee's protected conduct and the employer's adverse action. *Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir. 2001). The Court finds that genuine issues of material fact exist with respect to all three factors.

For the first factor, the plaintiff must prove that the employee engaged in conduct protected by Title VII. Protected conduct includes an employee's opposition to discriminatory employment

practices. *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 702 (3d Cir. 1995). Plaintiff argues that Thomas opposed discriminatory employment practices in several direct and indirect ways. First, Thomas directly complained to general manager Cortazzo about the incident with her customer. (Docket No. 54 at ¶ 5). Second, Thomas overheard Merola telling owner Robert Gomes that he had called her a "fucking nigger," which alerted Gomes to the situation. (Docket No. 47 at ¶ 13). Third, both owners and assistant manager Sunhee Ponebshek admitted to knowing about certain events that concerned Thomas, including the incident with her customer and the "ongoing thing" between Merola and Thomas. (Docket No. 54 at ¶¶ 5, 9, 13). Fourth, Thomas directly told Merola, a manager, to stop using racially offensive language. (Docket No. 54 at ¶ 15). Fifth, Plaintiff claims that Thomas did not *formally* alert management as to the situation between her and Merola because she had witnessed how ineffectively Defendant's management team had dealt with her previous complaints, such as when she complained to Cortazzo about her customer. (Docket No. 54 at ¶ 13). Accordingly, Plaintiff argues that the above stated facts effectively alerted Defendant's owners and senior management to her opposition of the discriminatory employment practices that were occurring.

However, Defendant argues that Thomas failed to engage in protected conduct because her actions did not effectively communicate her opposition to the alleged discriminatory practices. (Docket No. 45 at 12). First, Thomas only complained to senior management about the incident with her disruptive customer. (Docket No. 45 at 12; Docket No. 47 at ¶ 6). A customer's offensive language is not an employment issue; it is an unfortunate part of the restaurant industry. (Docket No. 45 at 12). Second, Thomas did not complain to senior management about her concerns with

Merola's offensive language and behavior. (Docket No. 47 at ¶ 15). However, as Plaintiff points out, Defendant's employee handbook does not adequately address avenues to remedy situations such as these. (Docket No. 53 at 13; Docket No. 54 at ¶ 4). It does not require an employee to complain to senior management, as Defendant proffers. (Docket No. 53 at 13). The handbook does not define senior management, and it does not address the topic of racial harassment. (Docket No. 53 at 13;Docket No. 54 at ¶ 4). Moreover, Defendant cannot produce the handbook that its managers gave Thomas when she was hired in October 2003. (Docket No. 54 at ¶ 3; Docket No. 47 at ¶ 2). While it is currently disputed, it is possible that the owners failed to adequately address the situation. Therefore, viewing the record in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact with respect to this factor.

For the second factor, the plaintiff must prove that the employer took an adverse action against the employee either after or contemporaneous with the protected activity. In *Burlington v. White,* 548 U.S. 53, 68 (2006)(internal quotations and citations omitted), the Supreme Court held that the adverse action must be material, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." The Court required material adversity because "it is important to separate significant from trivial harms. Title VII . . . does not set forth a general civility code for the American workplace." *Id.* (internal quotations and citations omitted).

Plaintiff argues that Defendant refused to promote Thomas to a server trainer position because she allegedly opposed discriminatory employment practices. (Docket No. 53 at 14). In Thomas' opinion, the server trainer position was a chance for recognition and to earn more money.

A server trainer earned a higher hourly wage. (Docket No. 54 at ¶ 20). As a single mother, Thomas states that she worked hard at the restaurant to earn opportunities for advancement. (Docket No. 54 at ¶ 19; Docket No. 55 at 14). Thomas was proud to be the "go to person" at her place of employment. (Docket No. 54 at ¶ 19). Beginning in 2006, Thomas alleges that she repeatedly asked for the server trainer promotion, but Defendant's owners and managers ignored her request until March 2007, which was *after* she filed this complaint. (Docket No. 53 at 14; Docket No. 54 ¶¶ 25-26).

Defendant disputes the categorization of the server trainer position. (Docket No. 45 at 14). Rather than classifying it as a promotion, Defendant labels it as just another job category at the restaurant. (Docket No. 45 at 14;Docket No. 47 ¶ 19). In fact, server trainers tend to make less than regular servers because they work day instead of night shifts. (Docket No. 47 at ¶ 22). Therefore, Thomas was not hurt economically. Defendant also contends that Thomas did not request the server trainer position until March 2007, which was *before* the owners were served with or knew about this lawsuit. (Docket No. 45 at 14-15; Docket No. 47 at ¶ 26). After Thomas' March 2007 request, owner Rebecca Gomes promptly offered Thomas the server trainer position, which Thomas accepted. (Docket No. 47 at ¶ 26). Because there are serious discrepancies concerning the nature of the server trainer position and the timing of Thomas' placement in this position, the Court finds that there are genuine issues of material fact with respect to this factor.

For the third factor, the plaintiff must prove that a causal link exists between the employee's protected conduct and the employer's adverse action. Temporal proximity between these two events may satisfy this element if the timing is "unusually suggestive of retaliatory motive." *Shaner v.*

*Synthes,* 204 F.3d 494, 505 (3d Cir. 2000). Defendant argues that months passed between Thomas' alleged complaint to Cortazzo about her rude customer and her request for the server trainer position. (Docket No. 45 at 15-16). This sort of time frame does not rise to the level of "temporal proximity." (Docket No. 46 at 15-16). However, the parties dispute if and when Defendant's owners became aware of Thomas' concerns about Merola's language. If the owners' knowledge coincided with their alleged refusal to promote Thomas, then her claim may satisfy this element. Because these facts are disputed, the Court finds that there are genuine issues of material fact with respect to this factor and to the entire retaliation claim.

In addition to arguing that Plaintiff fails to establish a *prima facie* case for retaliation, Defendant also advocates that the Court should dismiss the retaliation claim because Thomas failed to exhaust all administrative remedies. (Docket No. 45 at 16). In *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. 1984), the court held that a plaintiff must exhaust all administrative remedies before filing a lawsuit by filing a timely discrimination charge with the EEOC. Defendant argues that, when Thomas filed her EEOC charge, she checked the "race box" but did not check the "retaliation box." (Docket No. 45 at 17). Therefore, Plaintiff is not entitled to file a lawsuit based on a retaliation claim. In *Waiters,* the court stated that the law does not require a plaintiff to continually file EEOC charges every time a new discriminatory act occurs. *Id.* The court permits suits based on new acts that are "within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints." *Id.* In this case, Plaintiff argues that Defendant retaliated because she complained about discriminatory employment practices. (Docket No. 63 at 4-5). Because her retaliation claim is directly linked to her original claim, the

Court finds that Defendant's argument has no merit.

## V. Conclusion

Accordingly, based on the foregoing, the Court **DENIES** Defendant's motion for summary judgment.

s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: August 19, 2008

cc/ecf: All counsel of record